IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAVINDER SINGH, ) | |
| ) | |
| Plaintiff, ) | NO. 3:23-cv-00527 |
| ) | |
| v. ) | JUDGE RICHARDSON |
| ) | |
| ALEJANDRO MAYORKAS, *Secretary of* ) | |
| *the United States Department of Homeland* ) | |
| *Security*, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This action involves Plaintiff's desire to receive a decision on his Form I-601A waiver application ("Application"), which allegedly has been pending with United States Citizenship and Immigration Services ("USCIS") since November 2021. (Doc. No. 1 at ¶¶ 1, 17). In the Petition for Writ of Mandamus that Plaintiff filed to initiate this case (Doc. No. 1, "Petition"), Plaintiff sues (in their official capacities only) the Secretary of the U.S. Department of Homeland Security ("Secretary") and the Secretary's relevant subordinate, the Director of USCIS (collectively, "Defendants").

Pending before the court is "Defendants' Motion to Dismiss" (Doc. No. 9, "Motion"), which is supported by an accompanying memorandum (Doc. No. 10). Plaintiff filed a response in opposition (Doc. No. 11), and Defendants filed a reply thereto (Doc. No. 13).

### PLAINTIFF'S CLAIMS

Via this action, Plaintiff seeks to compel USCIS to make a decision (metaphorically, thumbs-up or thumbs down) on the Application. The Application was an application for what is known as a provisional unlawful presence waiver (presented via USCIS Form I-601A) that,

according to the Petition, was filed in November 2021. The Court is of the view that an understanding of Plaintiff's claims, or Defendants' asserted reasons for their dismissal, does not require a great understanding of the nature of the Application or the particular role of this kind of application in a non-U.S. citizen's attempt to obtain particular immigration benefits. The following summary from another district court is adequate for present purposes:

> A foreign citizen seeking to live permanently in the United States requires an immigrant visa. . . . .
>
> To obtain an immigrant visa based on a close family relationship with a U.S. citizen or LPR is a multi-step process. The first step under the Immigration and Nationality Act (INA) is for the relative, who is a U.S. citizen or LPR, to file a Petition for Alien Relative—using Form I-130—with USCIS on behalf of his or her noncitizen family member to classify that noncitizen as an immigrant relative. Here, Plaintiffs satisfied this step: a Form I-130 petition was filed and fee paid to classify the noncitizen as an immigrant relative. The Form I-130 petitions were approved by USCIS.
>
> If the "immigrant relative" desires to continue to reside in the United States with their U.S. citizen/LPR family member during the immigration process, the next step in the immigration process can involve the immigrant relative applying for an I-601A Provisional Unlawful Presence Waiver. The filing of the I-601A application is a necessary step in the immigration process because, by remaining in the United States, the noncitizen is at odds with other immigration laws. A noncitizen who has been unlawfully in the United States for more than 180 days is deemed inadmissible for immigration benefits for a specified period of time following their departure or removal from the United States—and as discussed below, they must depart the United States as part of the process to obtain an immigrant visa. So, noncitizens who remain in the United States with their U.S. citizen/LPR family member for 180 days or more must seek relief from being deemed inadmissible by filing an I-601A application with USCIS. To establish eligibility for an I-601A waiver, the noncitizen "immigrant relative" must show that they are "the spouse or son or daughter of a United States citizen or" LPR and that refusing them entry "would result in extreme hardship to the citizen or lawfully resident spouse or parent" of the noncitizen. The USCIS has "sole discretion" to determine whether to grant an I-601A application for a waiver.
>
> If USCIS grants the I-601A application, the immigration-benefits process moves to the next step [in the process of determining whether the foreign citizen will obtain authorization to live permanently in the United States].

*Soto v. Miller*, No. 1:23-CV-03016-EFS, 2023 WL 8850747, at *1-2 (E.D. Wash. Dec. 21, 2023) (footnotes omitted). (Hereinafter, the Court will refer to the kind of waiver here at issue as an "I-601A provisional-unlawful-presence waiver").

Plaintiffs' claims are essentially based on a single underlying alleged fact and a corresponding underlying legal assertion, that is, respectively: (i) that his Application has been pending since November 2021; and (ii) given the lapse of time since its November 2021 submission (18 months at the time of the filing of the Petition and about 26 months as of now), his Application has not been processed within a reasonable time as required by law.

More specifically, Plaintiff appears to assert two claims. One claim is that the delay in processing the Application is in violation of the Administrative Procedure Act ("APA"), and in particular its provision that "(w)ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency [including USCIS] shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). An available remedy for this kind of APA violation is to have a district court "compel [the] agency action [that was] unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

The second claim is asserted pursuant to the Mandamus Act (a/k/a "Mandamus and Venue Act" or "MVA"), 28 U.S.C. § 1361, under which "a district court has 'jurisdiction [over] any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 766 (5th Cir. 2011) (quoting 28 U.S.C. § 1361). Unsurprisingly, the (only) relief available under the Mandamus Act is an order (or writ) of mandamus. "The plain language of § 1361 is clear that it only grants jurisdiction to consider a mandamus action; it does not grant jurisdiction to consider actions asking for other types of relief—such as injunctive relief." *Id.*

"[M]andamus commands the performance of a particular duty that rests on the defendant or respondent, by operation or law or because of official status." *Id.* (quoting 42 Am. Jur. 2d *Injunctions* § 7 (citations omitted)). The Mandamus Act concerns mandamus of a particular kind; "[u]nder the Mandamus and Venue Act, 28 U.S.C. § 1361, a district court has 'jurisdiction [over] any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" *Id.* (quoting 28 U.S.C. § 1361).

"If the relief sought by plaintiffs through a writ of mandamus is essentially the same as that sought under the APA, the court may consider the claim under the APA." *Soto*, 2023 WL 8850747, at *3 (citing *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997)). As explained in *Indep. Min. Co.*:

> The MVA provides district courts with mandamus power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Similarly, the APA allows a court to compel "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Courts may grant mandamus relief ordering an agency to act under the MVA only if the three elements of the general mandamus test are satisfied. On the other hand, courts generally apply the so-called *TRAC* factors in deciding whether to order relief in claims of agency delay brought under the APA. *See TRAC,* 750 F.2d at 79–80.
>
> Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the MVA, "in essence," as one for relief under § 706 of the APA. *See Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 230 n. 4., 106 S. Ct. 2860, 2866 n. 4, 92 L.Ed.2d 166 (1986). Because the relief sought is essentially the same, in the form of mandamus, we elect to analyze IMC's entitlement to relief under the APA.

105 F.3d at 507. The Court will do here as the court did in both *Indep. Min. Co.* and in *Soto.* 2023 WL 8850747, at *3 ("Because Plaintiffs seek the same relief through both their APA claims and the requested writs of mandamus, the Court considers the claims under the APA."). That is, the

Court will frame its analysis in terms of the APA, cognizant that the material aspects of the analysis and—even more to the point—the outcome would be the same if the Court were to choose to follow the rubric of a Mandamus Act claim.

## THE INSTANT MOTION

The Motion presents a particular kind of challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The Motion does not assert that the Petition fails to make the very basic allegations regarding subject-matter jurisdiction that generally are sufficient to survive any potential facial challenge (as described below) to subject-matter jurisdiction. The Motion does not, for example, contend that the Petition does not raise a federal question (or, alternatively, adequately allege diversity of citizenship, an alternative that is not implicated in the present case), and indeed it is clear that the Petition does present a federal question, i.e., claims arising under the laws of the United States.

Instead, Defendants contend that subject-matter jurisdiction is lacking in this case because a particular (immigration) statute divests this Court of jurisdiction it might otherwise have by virtue of the existence of a federal question. The relevant statutory provision states:

> The [Secretary] has sole discretion to waive clause (i) in the case of an immigrant who is the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the [Secretary] that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien. *No court shall have jurisdiction to review a decision or action by the [Secretary] regarding a waiver under this clause.*

8 U.S.C. § 1182(a)(9)(B)(v) (emphasis added). Notably, to say that the Secretary has sole discretion to waive "clause (i)"—meaning 8 U.S.C. § 1182(a)(9)(B)(i)—is to say that the Secretary has sole discretion to grant an I-601A provisional-unlawful-presence waiver. Likewise, to say that "[n]o court shall have jurisdiction to review a decision or action by the [Secretary] regarding a

waiver under this clause" is to say that no court shall have jurisdiction to review a decision or action by the Secretary regarding an I-601A provisional-unlawful-presence waiver. And lest there be any possible doubt (which the parties here do not seem to have in any event), Section 1182(a)(9)(B)(v) prescribes a *jurisdictional bar*, rather than, for example, a mandatory claim-processing rule that (when applicable) defeats a claim for non-jurisdictional reasons. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 418–19 & n.5 (2023). So when applicable, Section 1182(a)(9)(B)(v) divests the court of subject-matter jurisdiction.

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial and factual attacks. *Gentek Bldg. Prods., Inc. v. Sherman-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack challenges merely the sufficiency of the pleading. *Id.* When reviewing a facial attack, a district court takes the allegations in the complaint as true. *Id.* If those allegations establish cognizable federal subject-matter jurisdiction, jurisdiction exists. *Id.* A factual attack instead raises a factual controversy concerning whether subject-matter jurisdiction exists. *Id.* The instant Motion presents a facial attack, inasmuch as it relies solely on the factual allegations and legal conclusion asserted in the Petition.

The basis for Defendants' facial challenge is clear. Plaintiff is asking this Court to review USCIS's delay in processing his Application, declare that such delay compels the conclusion that his Application has not been processed within a reasonable time as required by 5 U.S.C. § 555(b). Defendants' contention is that "the Court lacks jurisdiction [to review USCIS's delay in processing the Application] under the plain terms of Section 1182(a)(9)(B)(v)." (Doc. No. 10 at 10). This is because (according to Defendants) "where Section 1182(a)(9)(B)(v) insulates 'a decision or

*action'* from judicial review, USCIS's alleged unreasonable delay or failure to act, [which underlies] Plaintiff's claim here, constitutes agency action as defined by the APA." (*Id.* at 10-11).

Unsurprisingly, Plaintiff has the diametrically opposed view on the key question here, which is whether an unreasonable delay (which can also be described as a failure to act for an unreasonable period of time) constitutes an "action" within the meaning of Section 1182(a)(9)(B)(v).[1]

The Motion alternatively asserts that the Petition should be dismissed pursuant to Rule 12(b)(6) on the grounds that it fails to state a claim upon which relief can be granted. Ordinarily, the Court must address challenges to its subject-matter jurisdiction (before any contemporaneous Rule 12(b)(6) motion) first because "[s]ubject matter jurisdiction is always a threshold determination." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). So doing makes sense because if the Court lacks subject-matter jurisdiction, it should not be making merits-based decisions of the kind typically implicated by a Rule 12(b)(6) motion. *See Miller v. Collins,* No. 23-3191, 2023 WL 7303305, at *4 (6th Cir. Nov. 6, 2023) ("[D]ismissals pursuant to Rule 12(b)(6) are 'judgment[s] on the merits' and are therefore presumed to be with prejudice." (quoting *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004) (internal citation omitted))); *Michigan Surgery Inv., LLC v. Arman*, 627 F.3d 572, 576-77 (6th Cir. 2010) ("Dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice.") (quoting *Mitan v. Int'l Fid. Ins. Co.,* 23 F. App'x 292, 298 (6th Cir. 2001)).

---

[1] As for the alternative possibility that the unreasonable delay constitutes a "decision" within the meaning of Section 1182(a)(9)(B)(v), Defendants do not disavow its applicability here. But the Court deems that possibility much more of a longshot; the Court concludes that if an unreasonable delay is not an "action" for purposes of Section 1182(a)(9)(B)(v), then it likewise is not a "decision" for such purposes, either. *Soto*, 2023 WL 8850747, at *4 ("According to Black's Law Dictionary, 'decision' is a 'determination [made] after consideration of the facts and the law, and "action" is "the process of doing something; conduct or behavior."' Clearly, no 'decision' has been made on the pending I-601A applications.") (footnote omitted). And Defendants certainly have not provided any rationale to refute such a conclusion.

As these cited cases indicate, a dismissal under Rule 12(b)(6) is typically a dismissal with prejudice, while a dismissal for lack of jurisdiction (including for lack of subject-matter jurisdiction) is without prejudice; the distinction between these two kinds of dismissals can be significant, although the distinction typically is one without a (substantive) difference when the jurisdictional defect that led to the dismissal could not be fixed in any event such that filing the claims a second time (as permitted for dismissal without prejudice) would not do the plaintiff any good anyway.[2]

As set forth below, the Court finds that it lacks subject-matter jurisdiction over the claims in the Petition. Therefore, the Petition will be dismissed without prejudice, and the Court will not reach Defendants' argument under Rule 12(b)(6). *Michigan Surgery Inv., LLC*, 627 F.3d at 577 ("If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action.") (quoting 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2713, p. 239 (3d ed. 1998)).

## ANALYSIS

As noted above, the dispute over subject-matter jurisdiction here is really about whether an unreasonable delay is an "action" for purposes of Section 1182(a)(9)(B)(v). If (as Defendants contend) an unreasonable delay is an "action" for purposes of Section 1182(a)(9)(B)(v), then that provision operates to divest the Court of subject-matter jurisdiction. If it is not, then Section 1182(a)(9)(B)(v) is inapplicable and does not divest the Court of subject-matter jurisdiction.

---

[2] Readers can draw their own conclusions as to whether it ultimately makes any substantive difference whether the dismissal ordered herein is one with prejudice or one without prejudice.

One thing is clear: each of the two competing views on this issue have been adopted, respectively, by numerous federal courts.³ *Soto*, 2023 WL 8850747, at *6 n.21 (E.D. Wash. Dec. 21, 2023) (collecting cases). According to *Soto*, an opinion issued less than two months ago, "[t]he majority of the district courts addressing this question have found, for a variety of reasons, that judicial review is precluded." *Id.*⁴ This Court now joins the (apparent) majority, and in so doing it does not need to add to the variety of reasons for holding that view; the Court sees no reason to reinvent the analytical wheel. The Court's reasons are more than adequately stated in a pair of recent opinions.

---

³ For example, in *Lara-Esperanza v. Mayorkas*, No. 23-CV-01415-NYW-MEH, 2023 WL 7003418, at *4–6 (D. Colo. Oct. 24, 2023), the court squarely sided with the view advanced by Plaintiff in the instant case. In so doing, the court relied on a pair of recent cases that had done likewise, namely *Bamba v. Jaddou*, No. 1:23-CV-357, 2023 WL 5839593 (E.D. Va. Aug. 18, 2023), and *Granados v. United States*, No. 23-CV-00250-MEH, 2023 WL 5831515, at *1 (D. Colo. Aug. 23, 2023), However, the court thereafter noted:

> [A] handful of other district courts have reached the opposite conclusion and have decided that § 1182 prevents an applicant from seeking judicial relief for an unreasonable delay in the adjudication of their I-601A application. *See, e.g.*, *Lovo v. Miller*, No. 5:22-cv-00067, 2023 WL 3550167, at *3 (W.D. Va. May 18, 2023), *appeal docketed*, No. 23-1571 (4th Cir. May 26, 2023); *Mercado v. Miller*, No. 2:22-cv-02182-JAD-EJY, 2023 WL 4406292, at *3 (D. Nev. July 7, 2023), *appeal docketed*, No. 23-16007 (9th Cir. July 17, 2023) *Mafundu v. Mayorkas*, No. 23-CV-60611-RAR, 2023 WL 5036142, at *4 (S.D. Fla. Aug. 8, 2023); *Echeverri*, 2023 WL 5350810, at *4; *Vijay v. Garland*, No. 2:23-cv-157-SPC-KCD, 2023 WL 6064326, at *2 (M.D. Fla. Sept. 18, 2023).

*Lara-Esperanza*, 2023 WL 7003418, at *6.

⁴ Plaintiff asserts, in connection with immigration applications or benefits as whole rather than with respect to requests for an I-601A provisional-unlawful-presence waiver in particular, that the majority of courts have concluded that the statutory discretion to grant or deny an application or benefit does not grant the authority to not act on an application. (Doc. No. 11 at 3-4) (collecting cases purportedly adopting the purported majority view). The Court does not disagree but notes that this assertion can be true and yet fail to change the fact that the Court lacks jurisdiction to provide a remedy for an unreasonable delay in acting on an application. What Plaintiff's assertion highlights is the fact that the law requires USCIS to act (with a thumbs-up or thumbs-down) *at some point* on requests for an I-601A provisional-unlawful-presence waiver; the assertion does not support the notion that a court can intervene to make directives to USCIS as to when such action should occur.

In *Soni v. Jaddou*, No. 3:23-CV-50061, 2023 WL 8004292 (N.D. Ill. Nov. 17, 2023), the plaintiff (Soni) was essentially in Plaintiff's current position, and he sued the then-Director of USCIS (Jaddou). Addressing the precise issue implicated by the instant Motion, the court reasoned:

> Even if Soni's claim of unreasonable delay would otherwise be susceptible to judicial review under the APA, the jurisdiction strip divests this Court of jurisdiction.
>
> *i. APA definition of "agency action"*
>
> Jaddou argues that because (1) the APA defines "agency action" to include a failure to act, and (2) the jurisdiction strip precludes review of agency "action," Soni's claim of unreasonable delay—that is, a failure to act—is barred, a conclusion compelled by the importation of the APA definition into the jurisdiction strip. Several courts have relied, at least in part, on this reasoning to find against the existence of subject matter jurisdiction. *See, e.g.*, *Boczkowski v. Mayorkas*, No. 23–cv–02916 (N.D. Ill. Oct. 6, 2023) (Durkin, J.); *Mercado v. Miller*, No. 22-cv-02182, 2023 WL 4406292, at *2 (D. Nev. July 7, 2023); *Echeverri v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-21711, 2023 WL 5350810, at *4 (S.D. Fla. Aug. 21, 2023).
>
> The effective scope of the APA definitions, however, is limited to the APA itself, *see* 5 U.S.C. § 551, and the Seventh Circuit has cautioned against the use of the whole code canon. *White v. United Airlines, Inc.*, 987 F.3d 616, 624 (7th Cir. 2021) ("[Its] application ... rests on a shaky foundation. Appeals to consistency with other areas of the U.S. Code—especially different titles of the Code 'represent a ... risk of judicially overriding legislative assumptions and policies ....' "). So the APA definition can't decisively resolve the meaning of the jurisdiction strip.
>
> *ii. Statutory interpretation*
>
> Those courts that have rejected the dispositive force of the APA and reached the stage of ordinary statutory interpretation have divided as to whether the jurisdiction strip is effective as to similar claims of unreasonable delay. *Compare Beltran v. Miller*, No. 23CV3053, 2023 WL 6958622 (D. Neb. Oct. 20, 2023), *and Ybarra v. Miller*, No. 23CV3082, 2023 WL 7323365 (D. Neb. Nov. 7, 2023) (holding that the jurisdiction strip was effective as to such claims), *with Lara-Esperanza v. Mayorkas*, No. 23-cv-01415, 2023 WL 7003418, (D. Colo. Oct. 24, 2023), *and Bamba v. Jaddou*, No. 23-cv-357, 2023 WL 5839593 (E.D. Va. Aug. 18, 2023) (holding that it was ineffective).

Although there is a "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action," *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496, 111 S. Ct. 888, 112 L.Ed.2d 1005 (1991), that presumption may be overcome by "clear and convincing evidence of a congressional intent" to preclude review. *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 44, 113 S. Ct. 2485, 125 L.Ed.2d 38 (1993). When a statute—especially one that, on its face, purports to divest jurisdiction—is clear, there is no need to "resort to the presumption of reviewability." *Patel v. Garland*, 596 U.S. 328, 347, 142 S. Ct. 1614, 212 L.Ed.2d 685 (2022).

The jurisdiction strip again reads: "No court shall have jurisdiction to review a decision or action by the [Secretary] regarding a waiver." Its key words are therefore obviously: (1) decision, (2) action, and (3) regarding. Unless otherwise defined, statutory language is interpreted according to its "ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91, 127 S. Ct. 638, 166 L.Ed.2d 494 (2006). The Oxford English Dictionary defines, in relevant part, a decision as an "action or [the] fact of making up one's mind as to an opinion, course of action, etc.," and an action as the "performance of some activity or deed, typically to achieve an objective." As to "regarding," *Patel v. Garland* dealt with a similar jurisdiction-stripping provision in the INA, and interpreted it as having a "broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Patel*, 596 U.S. at 339, 142 S. Ct. 1614 (2022) (cleaned up).

With these definitions, it seems fair to say that, in this context, a decision is some kind of conclusion, preliminary or final, as to a petitioner's suitability for a waiver, which is arrived at by the action of processing information and deliberating about a petitioner's suitability for a waiver. And the effect of "regarding" is to make judicial review of any matter "relating to [those] subject[s]" unavailable.

One court has concluded that because action and decision imply "some affirmative action, not inaction or a failure to act," claims for unreasonable delay are not covered by the jurisdiction strip. *Bamba*, 2023 WL 5839593, at *2. If the statute merely forbade judicial review of "decisions or actions on waivers," this argument might settle the matter. But "regarding" must still do some work.

Soni's petition for a waiver is not being processed in a vacuum—as he acknowledges, many other waiver petitions are pending and being acted upon. *See* Compl. ¶ 88. His quarrel is with the fact that his is not among the happy few. In effect, he asks the Court to inquire into USCIS's procedures, decide if they are reasonable, and, if need be, compel it to alter the way petitions are processed so that his petition is processed more speedily, thereby displacing others.[3] Thus, any review of a putatively unreasonable delay as to his petition is necessarily review of the agency's decisions or actions "regarding [ ] waiver[s]"—that is, the other waivers under consideration—a conclusion also reached by other courts.[4] Because

judicial review over these subjects is divested by the jurisdiction strip, Soni's claim must be dismissed.

Soni warns that reading the jurisdiction strip in this way will "end unreasonable delay claims for provisional waivers and leave USCIS as the sole arbiter of what is an unreasonable delay." But the "theme" of the Illegal Immigration Reform and Immigrant Responsibility Act, which added the jurisdiction strip to the INA, was to "protect[ ] the Executive's discretion from the courts," *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 486, 119 S. Ct. 936, 142 L.Ed.2d 940 (1999), an aim that is perfectly constitutional and within the competence of Congress. *See Sheldon v. Sill*, 49 U.S. 441, 449, 8 How. 441, 12 L. Ed. 1147 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers."); U.S. Const. art. III, § 1; *see also Patel*, 596 U.S. at 346, 142 S. Ct. 1614 (2022) (asserting in dicta that it was "possible that Congress ... intend[ed]" to foreclose judicial review of a whole class of USCIS's discretionary decisions). This reading also comports with courts' general deference to agency decisions about the "proper ordering of its priorities," because the agency is "far better equipped . . . to deal with the many variables involved." *Heckler v. Chaney*, 470 U.S. 821, 832, 105 S. Ct. 1649, 84 L.Ed.2d 714 (1985). Through the jurisdiction strip, Congress has ensured that courts will not engage in any second-guessing of the agency's decisions about how best to fulfill its mandate.

\*\*\*

Jaddou's motion to dismiss for lack of subject matter jurisdiction is granted.

*Id.* at \* 2-4 (brackets in original) (some citations omitted).

In *Soto*, the court was more brief but nevertheless on point and, in the view of the undersigned, correct:

This question is a matter of statutory interpretation. There is a "well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action." Therefore, "clear and convincing evidence of a congressional intent to preclude judicial review entirely" is needed. This intent can be found in "specific language in a provision or drawn from the statutory scheme as a whole." Courts "must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless, or superfluous." "Phrases must be construed in light of the overall purpose and structure of the whole statutory scheme."

Here, the at-issue sentence is: "No court shall have jurisdiction to review a decision or action by ... [USCIS] regarding a waiver under this clause."[27] Section 1182 does not define "decision or action." However, the plain meaning of the

> language in this at-issue sentence supports Defendants' position that judicial review of USCIS's I-601A application-processing time is barred.
>
> According to Black's Law Dictionary, "decision" is a "determination [made] after consideration of the facts and the law, and "action" is "the process of doing something; conduct or behavior." Clearly, no "decision" has been made on the pending I-601A applications. But USCIS has made decisions about how to act on, or process, the I-601A applications, such as decisions as to staffing and application procedures, including its first-in-first-out policy. Moreover, the broad phrase "decision or action" is followed by another broad phrase, "regarding a waiver under this clause." "Regarding" "in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." The broad, all-encompassing language in the at-issue sentence reflects Congress's intent to allow USCIS to make decisions as to how and when to process filed I-601A applications. Congress precluded courts from reviewing whether the amount of time taken by USCIS is unreasonable. The relief that Plaintiffs seek is relief USCIS—or Congress—can provide, not this Court. Defendants' motion to dismiss on the grounds that Plaintiffs' I-601A-application claims are barred by 8 U.S.C. § 1182(a)(9)(B)(v) is granted.

*Soto v. Miller*, 2023 WL 8850747, at *4 (Shea, J.) (footnotes omitted) (brackets in original). The Court finds the reasoning of these cases sound and adopts both that reasoning and the resulting conclusion: 8 U.S.C. § 1182(a)(9)(B)(v) strips courts (not least this Court) of any jurisdiction it otherwise would have to review (for alleged unreasonableness in violation of 5 U.S.C. § 555(b)), and potentially grant the plaintiff relief based upon, the delay in USCIS's processing of a request for an I-601A provisional-unlawful-presence waiver.

The Court realizes that the correct resolution of the instant issue is not beyond reasonable debate. Courts in the apparent minority on this issue have articulated colorable support for their view. But on balance the undersigned finds their view less supported than the apparent majority view that the Court adopts herein.

The Court's decision herein should not be taken to suggest that the Court begrudges Plaintiff his frustration at the delay he has experienced, or that such a delay is not cause for concern. To the contrary, the Court would echo the remarks of Judge Shea:

> Defendants are reminded, however, that although § 1182(a)(9)(B)(v) affords USCIS sole discretion as to whether to grant an I-610A [sic] application, USCIS does not have discretion as to whether to adjudicate the application. The framework Congress established for I-610A [sic] applications makes clear that USCIS must adjudicate filed applications filed by eligible aliens. Moreover, Congress has suggested that the processing of an immigration-benefit application "should be completed no later than 180 days after the initial filing of the application."[33] Timely processing of filed I-601A applications will better serve Congress's stated intent.

*Soto*, 2023 WL 8850747, at *5. And the Court has the same sympathy for Plaintiff that Judge Shea had for the plaintiffs in his case. *See id.* at *1 ("Plaintiffs have waited years for the government to process their applications—or their family member's applications—for citizenship. Tired of waiting, Plaintiffs filed these lawsuits. Plaintiffs' frustration with the delay is understandable.") "But as is explained [above], Defendants are correct that the judiciary lacks the power to direct them to act on the filed I-601A application[ ]." *Id.*

## CONCLUSION

For the reasons set forth above, the Motion (Doc. No. 9) is **GRANTED**, and this action is DISMISSED without prejudice pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. The Clerk is directed to enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure and to close the file.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE